UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FORECLOSED ASSETS SALES AND TRANSFER PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>VILLAGE OF WEST DUNDEE; DAVID DANIELSON, in his individual and official capacity; SPRINGHILL GATEWAY LLC, an Illinois Limited Liability Company; and SPRINGHILL GATEWAY LLC, a Delaware Limited Liability Company,<br><br>Defendants. | No. 12 C 6699<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Foreclosed Assets Sales and Transfer Partnership ("FAST"), a partnership with its principal place of business in Tennessee, alleges that the Village of West Dundee incorrectly assessed certain property taxes related to a business improvement district on a share of a shopping center FAST owned at the time of the allegedly incorrect assessments. (FAST no longer owns the property.) FAST alleges that David Danielson is also responsible for this error in his capacity as the Village's finance director. FAST alleges further that the two Springhill Gateway LLC defendants (one organized in Delaware, the other in Illinois), which also own a share of the shopping center, improperly received the benefits of the business improvement district to FAST's detriment. The Court previously dismissed FAST's claims against the Village and Danielson (the "Village Defendants"). *See* R. 74

(*Bank of Camden v. Village of West Dundee*, 2014 WL 6655892 (N.D. Ill. Nov. 21, 2014)). The Court gave FAST the opportunity to replead, which FAST did by filing a fourth amended complaint. R. 107.[1] The Village Defendants have moved to dismiss the claims against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 111. For the following reasons, that motion is granted.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

---

[1] Bank of Camden was the original plaintiff in this case. In its opinion and order addressing the motion to dismiss the third amended complaint, the Court found that FAST was the actual owner of the property at issue in this case, and that Plaintiffs' allegation that Bank of Camden is FAST's agent did not establish standing. *See* R. 74 at 9-10 (*Bank of Camden*, 2014 WL 6655892, at *4). Thus, the Court dismissed Bank of Camden, and FAST is the only remaining plaintiff.

the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

**Background**

"A special service area in the State of Illinois is an area designated by a municipal governmental entity for redevelopment pursuant to the implementation of a statute of the State of Illinois known as the Special Service Area Act, 35 ILCS 200/27-5 *et seq*." R. 107 ¶ 9. The statute permits a municipality to issue bonds to raise funds for improvements within the Special Service Area ("SSA"), which are then repaid with a special property tax levied on the taxpayers in the SSA. *Id.* ¶¶ 10, 17-21.

The Springhill Gateway Shopping Center is located in the Village. *Id.* ¶ 6. The Shopping Center is divided into two sections, east and west. *Id.* ¶¶ 6-8. FAST owns the east section, whereas the Springhill Defendants own the west section. *Id.*

The Village adopted an ordinance establishing an SSA to fund a renovation of the Shopping Center. *Id.* ¶¶ 15, 17. The ordinance authorized issuance of $2.95 million worth of bonds. *Id.* ¶ 17. The Village only issued $1.5 million worth of bonds. *Id.* ¶ 19. FAST alleges that its tax assessment was incorrectly based on the potential $2.95 million in bonds, rather than the $1.5 million that was actually issued. *Id.* ¶ 21. FAST also alleges that this error has affected it disproportionately relative to the west section of the Shopping Center owned by the Springhill

Defendants. *Id.* ¶ 29. FAST alleges that this error has devalued its share of the Shopping Center by $500,000. *Id.* ¶ 28.

In addition to the tax assessment error, FAST alleges that the Village improperly prevented it from leasing space in its share of the Shopping Center to the Salvation Army by denying the Salvation Army the necessary business license. *Id.* ¶¶ 66-78. FAST alleges that if it had been able to lease space to the Salvation Army it could have sold its share of the Shopping Center for $2.85 million. *Id.* ¶ 77. FAST alleges that because it was unable to lease space to the Salvation Army it was "forced" to sell the property for $1,968,750. *Id.* ¶ 76.

FAST also alleges that the Village Defendants have improperly refused to reimburse it for renovation expenses that should be covered by the SSA funding. *See id.* ¶¶ 39-54. The disbursement of SSA funds is governed by a contract, the "Disbursement Agreement." *See* R. 107-2 at 3-9. The Disbursement Agreement includes language "excluding reimbursement." *Id.* at 3 (Section 1.01). But FAST argues that this language only applies to expenses incurred before the Disbursement Agreement took effect.

In Count I of the fourth amended complaint, FAST seeks damages from the Village Defendants for the "diminution in resale value," R. 118 at 6, of its former property due to the alleged tax assessment error. In Count III, FAST seeks to have the Village reimburse it for certain renovation costs pursuant to the Disbursement Agreement. In Count IV, FAST seeks those same reimbursements on an equal

4

protection theory. And in Count V, FAST alleges that the Village tortiously interfered with its lease agreement with the Salvation Army.[2]

## Analysis

**Count I**

In Count I of the fourth amended complaint, FAST alleges that the Village incorrectly calculated the SSA tax FAST owed on the Shopping Center. FAST seeks relief for this allegedly incorrect tax assessment based on the allegation that the mistake "devalued" FAST's share of the Shopping Center "by approximately $500,000," and that this "devaluation has adversely affected the resale value of [FAST's share of the Shopping Center]." R. 107 ¶ 28. These alleged facts were also included in Count I of the *third* amended complaint. But in that iteration of the complaint, FAST claimed that the Village Defendants violated the SSA Act not simply by imposing an improper tax amount, but by improperly using the tax revenue to "disproportionately benefit" the share of the Shopping Center FAST did not own. FAST argued that the Act requires "a rational relationship between the amount of the tax levied . . . and Special Services benefits rendered." R. 62-1 ¶ 44. The Court granted the Village Defendants' motion to dismiss this claim holding that the Act did not require the "rational relationship" as FAST argued.

Here in its *fourth* amended complaint, FAST has removed reference to an improper use of the tax revenue, and simply alleges that the Village Defendants

---

[2] Count II claims that the Springhill Defendants are liable for the allegedly unfair apportionment of the SSA tax assessment and is not at issue on this motion brought by the Village Defendants.

assessed the wrong amount of taxes. FAST alleges that this error devalued its former property and made it more difficult to sell. FAST argues that the Court has already recognized the viability of this claim when in its opinion addressing the Village Defendants' motion to dismiss the third amended complaint, the Court held that FAST had "alleged an injury with respect to the resale value of the East Property." R. 118 at 6 (citing R. 74 at 11 (*Bank of Camden*, 2014 WL 6655892, at *5)).

The Court's previous opinion, however, held only that FAST has sufficiently alleged an "injury-in-fact." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The mere fact that FAST has sufficiently alleged an "injury-in-fact" does not mean that FAST has stated a claim for relief. *See Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 673 (N.D. Ill. 2016) ("[T]he question of whether a plaintiff has standing to bring suit, and thus whether the court has jurisdiction to hear the controversy, is separate from the question of whether a plaintiff has a cause of action, and that constitutional standing may exist even where a cause of action does not." (citing *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979))). The problem here is not that FAST has failed to allege an injury-in-fact sufficient to confer standing, but that FAST has failed to allege facts that give rise to a claim for relief. Although "plaintiffs are not required to plead specific legal theories," *Avila v. Citimortgage, Inc.*, 801 F.3d 777, 783 (7th Cir. 2015), "[w]hen presented with a motion to dismiss, the nonmoving party must proffer some legal basis to support his cause of action." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). FAST argues that its

6

claim in Count I is "that it was injured with respect to the resale value and devaluation of the East Property as a result of the Village's action." R. 118 at 9. But this just restates its allegations supporting the existence of an injury-in-fact. By contrast, FAST's argument fails to identify a cause of action that would permit the Court to grant FAST the relief it seeks based on the injury-in-fact it alleges.

The Village Defendants highlight this issue in their opening brief. *See* R. 111 at 8 ("Under what possible theory is a (former) property owner entitled to a 'monetary judgment' for 'devaluation' caused by the government imposing taxes?"). The Village Defendants surmise that FAST might be asserting an objection to the taxes levied. But FAST denies that it is making a tax objection, *see* R. 118 at 8, and argues that the Village Defendants "fail[] to understand the distinction between a claim for tax overpayment and a claim for diminution in resale value as a result of the [incorrect] re-assessment of the Property." *Id.* at 6. This argument, however, demonstrates that FAST continues to conflate "injury" (i.e., the "diminution in resale value") with a cause of action that entitles FAST to relief for its injury at the Village Defendants' expense. FAST has failed to put forward any such cause of action.

In the absence of an argument from FAST based on a particular legal theory, the Court agrees with the Village Defendants that FAST's allegations point to a claim that FAST was incorrectly taxed and that this incorrect tax resulted in an injury related to the salability of the property. As the Village Defendants point out, however, an objection to property taxes—of which SSA taxes are a type—must be

7

brought pursuant to the procedures outlined in 35 ILCS 200/23-15. These procedures require a complaint to be filed "in the circuit court of the county in which the subject property is located," 35 ILCS 200/23-15(a), which is obviously not this Court. But what's worse for FAST, this procedure only provides a remedy for "objections . . . to taxes, assessments, or levies," and "shall be construed to provide a *complete* remedy for any claims with respect to those taxes, assessments, or levies." 35 ILCS 200/23-15(b)(1) (emphasis added). Thus, even if this Court was the proper venue for FAST to object to the taxes assessed against it, it appears that the only relief available in a tax objection action under Illinois law is recovery of the overcharged "taxes, assessments, or levies." It does not appear that the statute permits recovery of consequential or economic damages, such as the diminution in value that FAST seeks. But as discussed, regardless of whether the relief FAST seeks is available under the statute, this is not the proper court in which to seek that relief. Therefore, Count I is dismissed.[3]

---

[3] FAST argues that this statutory procedure for objecting to a property tax assessment cannot be the only available legal relief for the incorrect tax assessment because the Village is responsible for the incorrect tax calculation, whereas the statute provides that a complaint filed in the circuit court "shall name the county collector as defendant." 35 ILCS 200/23-15(a). The requirement of naming the county assessor for the Village's incorrect assessment, however, makes sense, because even though municipalities like the Village are responsible for administering SSA's, *see* 65 ILCS 5/11-74-4; 35 ILCS 200/27-15, the counties are responsible for *collecting* property taxes. And since it appears that the only relief available is a refund, there would not be a need to name the Village, even though the Village's action was the source of the alleged error.

8

**Count III**

In Count III, FAST alleges that the Village's failure to pay for certain improvements made to FAST's part of the Shopping Center violates the Disbursement Agreement that governs payments under the SSA. FAST alleges that the Village has "refused . . . to reimburse[] [FAST] for . . . the actual costs of the improvements" FAST made to its property in the Shopping Center, which FAST "fully paid . . . in advance of the reimbursement request." R. 107 ¶ 27.

The Village argues that the Disbursement Agreement does not obligate it to pay the reimbursements FAST seeks because the agreement "exclud[es] reimbursements." R. 107-2 at 3 (Section 1.01). FAST argues that "[i]t is illogical to argue that the SSA Disbursement Agreement authorizes payments of SSA Funds to Property Owners, yet somehow excludes them as 'reimbursements.'" R. 118 at 11. FAST continues, "[s]uch an argument ignores the purpose and intent of the SSA Disbursement Agreement and all prior Bond Ordinances relating to [the] SSA." *Id.* FAST contends that the exclusion of reimbursements is intended to apply only to property improvements paid for before the effective date of the Agreement.

But the primary question is not whether such an interpretation is "illogical," but whether the interpretation comports with the contractual context. *See Walls v. Vre Chicago Eleven, LLC*, 2016 WL 5477554, at *4 (N.D. Ill. Sept. 29, 2016) ("It is a well established rule of construction that words must be construed in context, which means including the surrounding words." (citing *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) ("[B]ecause words derive their meaning from the context in which

they are used, a contract must be construed as a whole, viewing each part in light of the others. The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself.""))). Indeed, other provisions of the Disbursement Agreement governing the processes for disbursements appear to require that payment for improvements to the Shopping Center be made directly to the contractors making the improvements. The agreement provides that SSA bond proceeds "shall be" paid "directly to the person or entity entitled to payment as specified" in "Payment Request Forms" submitted by "the Borrower." R. 107-2 at 4 (Section 2.02). (The "Borrower" is defined as Springhill Gateway LLC, and FAST alleges that it is a party to the Disbursement Agreement because it bought its share of the Shopping Center from Springhill.) This provision makes a distinction between "the Borrower" and "the person or entity entitled to payment," and requires that payment be made "directly" to "the person or entity entitled to payment." By contrast, there is no provision in the Disbursement Agreement providing for direct payment to the Borrower for costs associated with property improvements.

Further supporting a literal application of the Disbursement Agreement's prohibition on "reimbursements" is the Disbursement Agreement's contingency plan in the event that investment of the bond proceeds results in there being "insufficient" funds to pay for the renovations to the Shopping Center that are the SSA's purpose. R. 107-2 at 6 (Section 3.04). In such circumstances, the Borrower is required to "deposit additional funds" into the SSA account "to be disbursed in

accordance with" the Disbursement Agreement. *Id.* The Disbursement Agreement also provides for the Disbursement Agent to repay any "remaining" deposit made by the Borrower, presumably once the SSA account has been replenished through its investments. *Id.* at 4 (Section 2.03). The terms of the Disbursement Agreement itself do not reveal why the Borrower is obligated to deposit funds in the SSA account in case of a deficit. But since the Disbursement Agreement imposes this obligation on the Borrower, it makes sense for the Agreement to also prohibit reimbursements. If reimbursements were permitted, whenever the SSA account was in a deficit the Borrower would simply pay for property improvements directly itself and wait to seek reimbursement until the SSA account was replenished. Instead, Disbursement Agreement requires that the Borrower make deposits to satisfy deficits in the SSA account, demonstrating that the Disbursement Agreement's prohibition on "reimbursements" should be applied literally. Therefore, Count III is dismissed.

**Count IV**

In Count IV FAST alleges that the Village's failure to disburse funds under the Disbursement Agreement violates the Equal Protection Clause of the Fourteenth Amendment. To state a claim for an equal protection violation, FAST must allege arbitrary conduct by a state actor. But FAST's allegation that the Village's decisions were arbitrary is predicated on the Village's alleged violation of the terms of the Disbursement Agreement. These allegations fail to state an equal protection claim because "it has long been settled that a mere breach of contract by

11

the government does not give rise to a constitutional claim." *Taake v. City of Monroe*, 530 F.3d 538, 541 (7th Cir. 2008) (citing *Sudeikis v. Chi. Trans. Auth.*, 774 F.2d 766, 770 (7th Cir. 1985)). Moreover, the Court has found that FAST's contract claim fails. Therefore, Count IV is dismissed.

**Count V**

FAST alleges that the Village tortiously interfered with its potential lease with the Salvation Army when the Village denied the Salvation Army's business application license. The Illinois Tort Immunity Act provides that a "local public entity is not liable for an injury caused by the . . . denial . . . of, or by the failure or refusal to issue . . . any permit, license, certificate, approval, order or similar authorization where [the defendant] is authorized by enactment to determine whether or not such authorization should be . . . denied." 745 ILCS 10/2-104. FAST argues that Defendants should not be "allowed to hide behind a cloak of immunity for intentional misuse of their office." R. 118 at 20. But the Supreme Court of Illinois has held that the "alleged motives behind the issuance or denial of a permit or similar authorization are irrelevant in the analysis of immunity under section 2-104. Indeed, the provision has been broadly applied, providing absolute immunity even where the conduct of the governmental entity was allegedly based on 'corrupt or malicious motives.'" *Murphy v. Village of Plainfield*, 2009 WL 900766, at *6 (N.D. Ill. Mar. 31, 2009) (quoting *Village of Bloomingdale v. CDG Enters., Inc.*, 752 N.E.2d 1090, 1098 (Ill. 2001)). FAST argues that the Village did not properly conduct a public meeting necessary to deny the Salvation Army's license application. But

12

FAST does not allege that the license was improperly denied or that the Village lacked the authority to deny the license. Section 2-104 makes the Village immune to a claim based on denial of a license the Village had the authority to deny. Therefore, Count V is also dismissed.

## Conclusion

For the foregoing reasons, the Village Defendants' motion to dismiss, R. 111, is granted, and Counts I, III, IV, and V are dismissed with prejudice. This is the fourth amended complaint, and the Court finds that a fifth bite at the apple would be futile.

With regard to Count II, the Court granted a default judgment against the Springhill defendants on November 26, 2012. *See* R. 24. A hearing on the extent of damages was scheduled and postponed, and never rescheduled. FAST should contact the Court to schedule such a hearing if it is necessary. If FAST does not do so by February 13, 2017, the case will be closed.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: January 11, 2016